<u>**MEMORANDUM IN SUPPORT OF MOTION**</u>

**I.    INTRODUCTION.**

This case is about access.  Plaintiff HAWAII DISABILITY

RIGHTS CENTER ("Plaintiff") filed its Complaint for Declaratory

and Injunctive Relief ("Complaint") on August 25, 2005 claiming

to be the State of Hawaii's designated protection and advocacy

("P&A") system, although it has yet to offer any proof of this

purported designation.

In such capacity, Plaintiff claims that it is entitled

to "unaccompanied access to the facilities, records, staff, and

individuals with developmental disabilities, to monitor

compliance with respect to the rights and safety of service

recipients" pursuant to 42 U.S.C. §§ 15001 *et seq*, and "access

[to] all records of any person with developmental disabilities,

and to advocate on the behalf of persons with developmental

disabilities, to the extent required by federal law," pursuant to

H.R.S. § 333F-8.5.  <u>See</u> Complaint at ¶¶ 2-3, attached to the

Concise Statement of Facts ("CSF") as Exhibit "A".  These alleged

"rights", however, are not absolute as Plaintiff suggests.

First, Plaintiff has not established that Defendants

even denied Plaintiff access to ORI's facilities, records, staff

and residents.  Summary judgment is therefore appropriate on this

basis alone.

Even if Plaintiff's allegations were accepted as true,

for purposes of this Motion only, Plaintiff has misapplied the

Federal authority to the facts of this case, and accordingly, has no basis in law to support its claims of access.

Finally, Defendant ORI is entitled to the defense that it is subject to State and Federal statutory and contractual provisions which contradict and/or supercede Plaintiff's alleged "policing" authority.  Defendants therefore cannot be liable for allegedly violating Plaintiff's purported "federal mandate" when Defendants, at all times, complied with the State and Federal contractual and statutory provisions that govern the operation of ORI.  Summary judgment in favor of Defendants is thus appropriate, as a matter of law.

## II.   STANDARD FOR SUMMARY JUDGMENT

Summary judgment serves to "dispose of factually unsupported claims or defenses."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986).  Summary judgment is appropriate where, "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); <u>O'Connor v. Boeing N. Am., Inc.</u>, 311 F.3d 1139, 1149-50 (9th Cir. 2002); <u>Tritton Energy Corp. v. Square D. Co.</u>, 68 F.3d 1216, 1220 (9th Cir. 1995).

A moving defendant may rest on the lack of evidence of one of the essential elements of a claim.  <u>See</u> <u>Celotex</u>, 477 U.S. at 323-325; <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 43 F.3d 1311, 1315 (9th Cir. 1995).  Once a moving defendant does this, the

burden then shifts to the non-moving party to "set forth **specific facts** showing that there is a **genuine** issue for trial." <u>Fazio v. San Francisco</u>, 125 F.3d 1328, 1331 (9th Cir. 1997)(emphasis added). "Factual disputes that are irrelevant or unnecessary will not be counted." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). And only where "**reasonable** minds could differ as to the import of the evidence" should summary judgment be denied. <u>Anderson</u>, 477 U.S. at 250 (emphasis added).

A "mere scintilla of evidence will be insufficient," <u>Fazio</u>, 125 F.3d at 1331, and summary judgment is appropriate if the "evidence is merely colorable or is not significantly probative." <u>Summers v. A. Teicher & Son, Inc.</u>, 127 F.3d 1150, 1152 (9th Cir. 1997) (citation omitted). "Some metaphysical doubt as to material facts will not suffice to defeat summary judgment." <u>Scribner v. Worldcom, Inc.</u>, 249 F.3d 902, 907 (9th Cir. 2001). Arguments "based upon mere speculation, conjecture or fantasy" are not sufficient to overcome a motion for summary judgment. <u>O.S.C. Corp. v. Apple Computer, Inc.</u>, 792 F.2d 1464, 1467 (9th Cir. 1986).

### III.   UNDISPUTED FACTS

**A.   ORI, GENERALLY**

ORI was founded in 1980 to address the needs of adults with developmental disabilities. <u>See</u> Declaration of Ann Higa ("Higa Dec.") at ¶ 3, attached to the CSF. In 1984, Helemano

Plantation, a training facility, was completed on a 5-acre parcel in Wahiawa, Oahu.  See Higa Dec. at ¶ 3.

Helemano Plantation provides a sheltered location where individuals with developmental disabilities may live and work. See See Higa Dec. at ¶ 4.  The program provides housing, education, training and employment to persons with developmental disabilities/mental retardation while promoting and developing the general welfare and quality of life for the participants. See Higa Dec. at ¶ 4.

At Helemano Plantation, individuals work in a "real work environment" while receiving the care they need.  See Higa Dec. at ¶ 5.  The income obtained through products produced and sold at Helemano Plantation helps to support the training program and establish semi-independence from traditional sources of funding.  See Higa Dec. at ¶ 5.  Helemano Plantation consists of The Country Inn (restaurant), Sandwich & Salad Buffet, Catering Services, Gateway to Asia (souvenir shop), The Bake Shop, and Fresh Farm Produce.  See Higa Dec. at ¶ 6.

ORI also maintains the Helemano Village, a residential community for adults with developmental disabilities.  See Higa Dec. at ¶ 7.  The Village consists of 9 homes, each accommodating up to five individuals.  See Higa Dec. at ¶ 7.  The Village is licensed by the State of Hawaii, and provides trained caregivers

- 4 -

and other qualified professionals who are available on-call 24 hours a day.  See Higa Dec. at ¶ 7.

ORI is heavily regulated by State and Federal contractual and statutory provisions that impose strict duties on ORI to maintain the confidentiality of its clients' information.

**B.    ORI'S INTERACTION WITH PLAINTIFF**

Sometime before August 4, 2005, the Office of the Public Guardian ("OPG") issued blanket consent forms to Plaintiff for five of ORI's client's.  See Complaint at ¶ 18.  These five clients were not Immediate Care Facilities ("ICF") clients, but rather, participants of the Medicaid waiver program.  See Complaint at ¶ 18; Declaration of Mary Reavis ("Reavis Dec.") at ¶ 3, attached to the CSF.  The ICF program is an entirely separate program from the Medicaid waiver program and is not governed by the same regulations and reviews.  See Reavis Dec. at ¶ 4.

On August 4, 2005, an investigator from Plaintiff arrived at ORI and presented the five blanket consent forms from OPG.  See Reavis Dec. at ¶ 5.  The five consent forms did not specify any expiration date.  See Reavis Dec. at ¶ 5; see also Consent Forms attached to the CSF as Exhibit "B".  The validity of the consent forms were questioned, but Defendant REAVIS nevertheless introduced the investigator to 4 of the 5 clients.

See Reavis Dec. at ¶ 7.   The fifth client was absent that day.
See Reavis Dec. at ¶ 7.

Although Plaintiff was given access to ORI's facilities, clients and records on August 4, 2005, Plaintiff commenced the present lawsuit against Defendants alleging the following causes of action:

1.   That Defendants denied unaccompanied access to ORI facilities, records, residents, and staff members in violation of Plaintiff's statutory rights under 42 U.S.C. § 15043;

2.   That Defendants have violated Hawaii Revised Statutes § 333F-8.5 and its administrative regulations.

See Complaint at ¶¶27 and 29.   As will be shown below, neither of these claims are supported as alleged against Defendants.

## IV.   ARGUMENT

There is absolutely no basis in law or in fact to support either of Plaintiff's claims against Defendants. Plaintiff has not established that it was denied access by Defendants; Plaintiff has misapplied the applicable statutory provisions to the factual allegations of this case; and Plaintiff cannot deny that ORI is subject to State and Federal contractual and statutory provisions that conflict with Plaintiff's alleged "Federal mandate."   Accordingly, summary judgment is appropriate in favor of Defendants as a matter of law.

**A.   PLAINTIFF HAS NO BASIS IN FACT TO SUPPORT ITS ALLEGATION THAT IT WAS DENIED ACCESS**

In the Complaint, Plaintiff alleges that on August 4, 2005, it was "denied access to the five clients and their individuals records, and to records relevant to the CMS audit" and "denied any access to the facility." See Complaint at ¶ 21. Plaintiff's allegations, however, have absolutely no basis in fact.

The evidence reflects that Plaintiff was provided access to four out of the five clients it had requested to see on August 4, 2005. See Reavis Dec. at ¶ 7. Indeed, the only client Plaintiff did not have access to was the client who was not present that day. See Reavis Dec. at ¶ 7. In fact, one of the clients that Plaintiff sought access to was located in an "employees only" area, which is generally restricted and not accessible to the public. See Reavis Dec. at ¶ 8. The client, at that time, was learning how to clean the bathroom with his job coach. See Reavis Dec. at ¶ 8. For some time, this particular client was being taught not to greet people with a hug and kiss since such acts resulted in the inappropriate reaction of the client getting aroused and having an erection. See Reavis Dec. at ¶ 9. The client was, instead, asked to greet people with a handshake. See Reavis Dec. at ¶ 9. Upon meeting the client, however, the investigator employed by Plaintiff immediately hugged and kissed the client and caused the inappropriate

- 7 -

reactions stated above.  <u>See</u> Reavis Dec. at ¶ 9.  The investigator's "access" to the client thus interrupted between 3-6 months of behavior training for this particular client.  <u>See</u> Reavis Dec. at ¶ 9.

Plaintiff plainly had access to the clients it requested to see.  Accordingly, Plaintiff has no basis in fact to support its claim that Defendants denied Plaintiff any access, and summary judgment is appropriate in favor of Defendants on this basis alone.

**B.  EVEN IF PLAINTIFF'S ALLEGATIONS WERE TAKEN TO BE TRUE, PLAINTIFF STILL CANNOT ESTABLISH ANY LIABILITY AGAINST DEFENDANTS**

Even assuming, *arguendo*, that Plaintiff's allegations were taken to be true, and Defendants did deny access to Plaintiff on August 4, 2005, Defendants cannot be held liable for such acts since Plaintiff misapplies the Federal statutory provisions to these facts.  In fact, it is unclear what authority Plaintiff even has to act as the State's alleged P&A system since Plaintiff has not provided any current information as to how it was appointed, and has not established how it continues to maintain this purported designation.

Notwithstanding the lack of proof that Plaintiff truly is the State's P&A system, Defendants were, at all times, acting in conformance with the State and Federal contractual and statutory provisions that govern ORI's operation, which are in

- 8 -

apparent conflict with Plaintiff's "authority." Accordingly, summary judgment is appropriate in favor of Defendants at this time.

### 1. PLAINTIFF MISAPPLIES FEDERAL STATUTORY AUTHORITY

Plaintiff has failed to satisfy the statutes and regulations that govern Plaintiff's own operation as the State of Hawaii's alleged "designated protection and advocacy system".

The Hawaii Revised Statutes ("HRS") only allow Plaintiff to access "the record of any person with developmental disabilities or mental illness, **to the extent required by federal law.**" See Haw. Rev. Stat. § 333F-8.5(c) (emphasis added). Plaintiff, if it really is the State's P&A system, is thus bound to follow the regulations set forth by federal law which do not give Plaintiff complete and unbridled access to ORI's facilities, clients, and/or records.

45 C.F.R. § 1386 and 42 U.S.C. § 15043 govern A&P systems that advocate for the rights of individuals with developmental disabilities. Neither of these statutes authorize full access to ORI's clients, records, or facilities as Plaintiff claims in its Complaint.

#### a. RECORDS

In the Complaint, Plaintiff alleges that it is was denied access to "the five clients and their individual records, and to records relevant to the CMS audit." See Complaint at

- 9 -

¶ 21.   Plaintiff, however, is not entitled to these records under the circumstances alleged in the Complaint.

Because Plaintiff sought to obtain the records of ORI's clients using blanket consent forms signed by the OPG, 45 C.F.R. § 1386.22(a)(2) applies to give Plaintiff access to the records of the following individual, only:

> (2)   an individual ... to whom **all** of the following conditions apply:
>
> (i)   The individual ... is unable to authorize the system to have access;
>
> (ii)  The individual does not have a legal guardian, conservator or other legal representative, or the <u>individual's guardian is the State</u> (or one of its political subdivisions); and
>
> (iii) With respect to whom a complaint has been received by the system or the system has probable cause ... to believe that believe that the individual has been subject to abuse or neglect...

<u>See</u> 45 C.F.R. § 1386.22(a)(2), attached to the CSF as Exhibit "C".[1]  The Complaint, however, is devoid of any allegation that Plaintiff had "probable cause" to believe that any of ORI's clients were subject to abuse or neglect.

---

[1]   <u>See also</u> 42 U.S.C. § 15043(a)(2)(I)(ii) attached to the CSF as Exhibit "D".  A P&A system shall have access to all records of... Any individual with a developmental disability, in a situation in which –
(I)   the individual, by reason of such individual's mental or physical condition, is unable to authorize the system to have such access;
(II)  the individual does not have a legal guardian, conservator, or other legal representative, or the **legal guardian of the individual is the State;** and
(III) a complaint has been received by the system about the individual with regard to the status or treatment of the individual or, as a result of monitoring or other activities, there is probable cause to believe that such individual has been subject to abuse or neglect...

- 10 -

At best, the Complaint attempts to infer, although it does not allege, that Plaintiff received some type of complaint. That is, Plaintiff references a "series of CMS surveys of ORI's Immediate Care Facilities" that reflect "serious deficiencies", and alludes to this allegation as the basis for Plaintiff's attempt to "monitor" five of ORI's clients.  See Complaint at ¶16 - 18.  Aside from taking this allegation completely out of context, the five clients that Plaintiff produced blanket consents for were not even ICF clients, which is who the CMS surveys related to.  Rather, the five clients were participants of the Medicaid waiver program, which is an entirely separate program that is not governed by the same regulations and reviews. Plaintiff's alleged receipt of the CMS surveys for the ICF clients therefore does not justify Plaintiff's attempt to review the records of the entirely separate Medicaid waiver program clients.

Moreover, Plaintiff is not entitled to "review the records relevant to the CMS audit" since Plaintiff could not have believed there was any allegation of abuse of CMS clients.  This is apparent by the fact that Plaintiff did not even attempt to review CMS related records until approximately seven months after the CMS surveys had been performed.

Using the facts that Plaintiff has alleged in its Complaint, Plaintiff is simply not entitled to full and complete access to ORI's records under any purported Federal authority.

### b.   FACILITIES AND INDIVIDUALS WITH DEVELOPMENTAL DISABILITIES

With respect to Plaintiff's demand for access to facilities and individuals, 45 C.F.R. § 1386.22(f) would authorize "reasonable unaccompanied access" to ORI facilities and clients only "when necessary to conduct a full investigation of an incident of abuse or neglect..."  As addressed above, however, there is no allegation of any abuse or neglect of any ORI client in the Complaint.

As evident by the plain reading of the statutory authority upon which Plaintiff relies, Plaintiff is not entitled to the unbridled access to ORI's clients, facilities and records. Accordingly, summary judgment is appropriate in favor of Defendants as a matter of law.

### 2.   ORI IS HEAVILY REGULATED BY STATE AND FEDERAL STATUTORY AND CONTRACTUAL PROVISIONS THAT CONFLICT WITH PLAINTIFF'S PURPORTED "FEDERAL MANDATE"

Even if ORI were found to have violated one of the federal statutory provisions that govern Plaintiff's operations, ORI should be allowed to rely upon the defense that it, at all times, complied with the State and Federal statutory and contractual provisions that appear to be in direct conflict with

Plaintiff's purported "Federal mandate".  Accordingly, summary judgment in favor of ORI should be granted in its entirety.

> **a.   ORI'S CONTRACT WITH THE STATE OF HAWAII REQUIRES ORI TO MAINTAIN THE STRICT CONFIDENTIALITY OF ITS CLIENT'S RECORDS**

ORI currently has a contract with the State of Hawaii ("State Contract") to provide Medicaid waiver services to individuals admitted into Hawaii's Home and Community Based Services for Persons with Developmental Disabilities/Mental Retardation Medicaid Waiver Program ("Medicaid waiver program"). See Higa Dec. at 8; see also State Contract attached to the CSF as Exhibit "E".  The State Contract requires ORI to abide by the "applicable sections of Department of Human Services, Social Services Division, Adult and Community Care Services Branch or its designee, and Medicaid Waiver Services operational policies, procedures, standards and guidelines..." specifically including "Chapters **17-1401,** 17-1402, 17-1403, 17-1404, 17-1736, and **17-1439** of the Hawaii Administrative Rules."  See State Contract at ¶ 1.

The State Contract further requires ORI to ensure "The confidentiality of PARTICIPANT records and other information related to PARTICIPANT, pursuant to Chapter 17-1401 of the Hawaii Administrative Rules. *For purposes of this Agreement, the confidentiality provisions contained in HAR Chapter 17-1401 shall apply to PROVIDER to the same extent as they apply to the ACCSB*

- 13 -

[Adult Community Care Services Branch]...See State Contract at ¶1.n.1 (emphasis in original).

Stated otherwise, ORI must comply with the same regulations that apply to the State Department of Human Services ("DHS"), as detailed in the Hawaii Administrative Rules ("HAR"). ORI must therefore maintain the strict confidentiality of its client's records unless and until it is provided with certain specified information, in writing.

### i.   HAR § 17-1401

HAR Title 17, Subtitle 9, Chapter 1401, "Confidentiality," which is cited in the State Contract, governs Adult and Community Care Programs.  See Haw. Admin. R. § 17-1401 attached to the CSF as Exhibit "F".  Generally, Chapter 1401 details the circumstances when ORI "may disclose information relating to applicants and recipients of child support and social services programs."  See Haw. Admin. R. § 17-1401-1.

HAR § 17-1401-2 is the first of several governing regulations that is in apparent direct competition with Plaintiff's alleged federal authority.  HAR § 17-1401-2 instructs that the information that ORI acquires about its clients shall "not be subject to **any other law** permitting inspection of public records."  The plain language of HAR § 17-1401-2 does not identify any exceptions to this rule.

- 14 -

HAR § 17-1401-3 requires ORI to maintain the confidentiality of certain client information[2] unless and until certain detailed conditions are met.  The conditions that must be satisfied given the facts in the instant case are as follows:

(A)   When individuals other than applicants, recipients, or legal guardians of applicants or recipients wish to obtain information, or to review a department record, **the individual shall submit a statement, signed and dated by the applicant, recipient, or legal guardian of the applicant or recipient specifying:**

    (i)   **the name of the individual authorized to receive the information or to review the record, and the individual's agency connection, if any;**

    (ii)  The **specific information** the department is authorized to release and **the purpose** for which the information is being sought;

    (iii) Applicant or recipient's social security number, birth date, and address; and

    (iv)  **Specific period of time the authorization is valid, not to exceed ninety days...**

See HAR § 17-1401-3(c)(8)(A).

---

[2]     HAR § 17-1401-3(b) details the information that shall be deemed confidential and not subject to disclosure by ORI except as provided in other subsections of the HAR.  The protected information includes the following: (1) Names and addresses of applicants and recipients, and amounts of assistance provided.  This includes prohibition against release of information to any federal, state, or local committee or legislative body; (2) Information related to the social and economic condition or circumstances of a particular individual, whether or not an applicant or recipient, including wage information obtained from the state department of labor or from Social Security Administration; (3) The department's evaluation of recorded or unrecorded information about a particular individual, whether or not an applicant or recipient; (4) **Medical, psychological, or psychiatric data, including diagnosis and past history of disease or disability of a particular individual, whether or not an applicant or recipient;** (5) Correspondence concerning a particular individual, whether or not an applicant or recipient; and (6) The name of the worker or unit in which the case is or was active.

Plaintiff has not satisfied all the conditions identified in HAR § 17-1401-3(c)(8)(A).  As stated in the Complaint, Plaintiff requested access to the records for five clients, but only produced blanket release forms signed by the OPG.  These blanket release forms violated HAR § 17-1401-3(8)(A) because they did not (1) identify the name of the person(s) authorized to review the records, (2) detail the specific information being sought or the purpose for which it was being sought, or (3) specify any expiration date.  To correct these deficiencies, ORI would have been entitled to request that Plaintiff provide the additional information, in writing.[3]

### ii.  HAR § 17-1439

The State Contract similarly directs that ORI is to be regulated by the provisions of HAR § 17-1439 which governs Community Longterm Care Programs.  See Haw. Admin. R. § 17-1439 attached to the CSF as Exhibit "G".

HAR § 17-1439-10(b) generally prohibits ORI from releasing the following information about its clients who are admitted into the Medicaid waiver program:

---

[3]     Even assuming, *arguendo,* that ORI were allowed to disclose its clients' records to Plaintiff, ORI could not, pursuant to the HAR, release the entire case record of a client.  See HAR § 17-1401-3(c).  HAR § 17-1401-3(e), in fact, specifically states that "The case record or information **shall not** be released in a judicial or administrative proceeding, either voluntarily or in response to any subpoena unless permitted by subsection (c)..."  See Haw. Admin. R. § 17-1401-3(e).  Therefore, at best, ORI would only be allowed to release the information detailed in footnote 1 above.

    (1)   Names and addresses;

    (2)   Eligibility status, the amount of assistance, or both;

    (3)   Medical services provided;

    (4)   Social and economic conditions or circumstances;

    (5)   The department's evaluation of personal information; and

    (6)   Medical data, including diagnosis and past history of disease or disability.

ORI is, instead, directed to follow the other departmental rules regulating the release of client information.  As argued above, however, the governing rules, as reflected in HAR § 17-1401, would not allow the release of client information under the present circumstances.

### iii. HAR § 17-1454

Although not specifically listed in the State Contract, ORI is also subject to regulation by HAR § 17-1454.  <u>See</u> selected pages of Haw. Admin. R. § 17-1454 attached to the CSF as Exhibit "H".

HAR § 17-1454-13.1, "Confidentiality of applicant and recipient information", states that "All information relating to individuals who apply for or receive home and community-based care management ... shall be confidential."  <u>See</u> Haw. Admin. R. § 17-1454-13.1(a) (emphasis added).  Facilities like ORI are thus required to "safeguard" confidential information and are

- 17 -

restricted from using or disclosing such information about an applicant or recipient of services unless:

> (1)   The applicant recipient or a legal representative of the applicant or recipient has authorized in writing the use or disclosure of the information;
>
> **or**
>
> (2)   The use or disclosure is specifically permitted under applicable federal or state rules or regulations.

See Haw. Admin. R. § 17-1454-13.1(c) (emphasis added).  For the reasons stated above, however, no applicable federal or state rules or regulations permit the disclosure of such information under the circumstances surrounding this dispute.  ORI therefore did not need to provide Plaintiff with the access demanded.

### b.   ORI'S CONTRACT WITH THE DEPARTMENT OF DEFENSE PROHIBITS ORI FROM RELEASING ANY CLASSIFIED INFORMATION WITHOUT OBTAINING PRIOR GOVERNMENT APPROVAL

In March, 2004, ORI began the process of obtaining clearance to enter into a contract with the military for the performance of services.  See Higa Dec. at ¶ 10.  ORI obtained interim clearance in August 2004, and final clearance in August, 2005.  See Higa Dec. at ¶ 10.  ORI thereafter entered into a contract with the military, and is now subject to the regulations set forth in the National Industrial Security Program Operating

Manual ("Manual"), authored by the Department of Defense.[4]  See
Higa Dec. at ¶ 11; see also selected pages of Manual attached to
the CSF as Exhibit "I".

The Manual directs that "Contractors shall protect all
classified information to which they have access or custody.  A
contractor performing work within the confines of a Federal
installation shall safeguard classified information in accordance
with provisions of this Manual and/or with the procedures of the
host installation or agency."  See Manual at 1-200.

The pertinent provision of the Manual applicable here
is contained in Chapter 5 ("Safeguarding Classified
Information"), Section 5 ("Disclosure") which states,
"Contractors shall ensure that classified information is
disclosed **only to authorized persons."**  See Manual at 5-500
(emphasis added).  Contractors are even prohibited from
disclosing "classified information to federal or state courts, or
to attorney hired solely to represent the contractor in a
criminal or civil case, except in accordance with special
instructions of the agency that has jurisdiction over the
information."  See Manual at 5-510.

---

[4]    Although ORI did not formally enter into a contract with the
military until August 2005, it was required to maintain and follow the
confidentiality provisions detailed in the Manual during the entire process.
See Manual at 1-102(b) (The Manual is to be used by the contractor facility
"to safeguard classified information released **during all phases** of the
contracting, licensing, and grant process, including bidding, negotiation,
award, performance, and termination.")

Contractors are also prohibited from disclosing "classified of unclassified information to the public without prior review and clearance as specified in the Contract Security Classification Specification for the contract or as otherwise specified by the CSA or GCA." See Manual at 5-511.

The only information that ORI **may** disclose without prior review or approval from the Department of Defense is the following: (1) the fact that a contract has been received, including the subject matter of the contract and/or type of item in general terms provided the name or description of the subject matter is not classified; (2) the method or type of contract; such as, bid, negotiated, or letter; (3) total dollar amount of the contract unless that information equates to, (a) a level of effort in a sensitive research area or (b) quantities of stocks of certain weapons and equipment that are classified; (4) whether the contract will require the hiring or termination of employees; (5) other information that from time-to-time may be authorized on a case-by-case basis in a specific agreement with the contractor; and (6) information previously officially approved for public disclosure. See Manual at 5-511(b). For all other information, ORI must obtain prior approval before disclosure can be made.

ORI cannot simply disclose all of its clients' files to Plaintiff since some of the files may contain information considered "classified" by the federal government, and could

- 20 -

result in the termination of this valuable contract.   ORI, therefore, should not be penalized for complying with its Federal contractual duties.

Plaintiff's Complaint does not include any facts to establish that Defendants denied Plaintiff access to ORI's facilities, records or clients.  Moreover, the facts, as alleged by Plaintiff do not establish any violation of any Federal statutory authority by Defendants.

Even if such a violation were to have occurred, Plaintiff has not established that it even has the current authority to act as the State's P&A System and that it is properly using this authority to investigate abuses and/or neglect of persons with developmental disabilities and/or mental retardation.  At the very least, Defendants should be allowed to rely upon the defense that it complied, at all times, with the State and Federal statutory and contractual provisions that govern and regulate its operation.  Under these circumstances, Defendants are entitled to summary judgment on all claims alleged in the Complaint, as a matter of law.

### V.   CONCLUSION

For the foregoing reasons, Defendants Susanna F. Cheung, Ann K. Higa, Mary Reavis, and Opportunities for the

/

/

- 21 -

Retarded, Inc. respectfully move this Court for an order granting summary judgment on all claims alleged in the Complaint.

   DATED:  Honolulu, Hawaii, April 26, 2006.

       _____
       JOHN T. KOMEIJI
       GREGG M. USHIRODA
       KAREN Y. ARIKAWA
       Attorneys for Defendants
       **SUSANNA F. CHEUNG, ANN K. HIGA,
       MARY REAVIS, AND OPPORTUNITIES FOR THE
       RETARDED, INC.**